IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02530-MSK-MEH

JACK ULREY,

       Applicant,

v.

ARI ZAVARAS, Executive Director, Colorado Department of Corrections;
ANGEL MEDINA, Warden, Limon Correctional Facility; and
JOHN SUTHERS, Attorney General, State of Colorado,

       Respondents.

---

## RECOMMENDATION FOR DISMISSAL

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Applicant has pending before this Court an Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 ("Application") [docket #1]. Respondents have filed their Answer

[docket #9] and Applicant filed a Traverse [docket #17]. Under the provisions of 28 U.S.C. §

636(b)(1) and Fed. R. Civ. P. 72, this matter has been referred to me for recommendation. *See*

docket #14. Based on the record contained herein, I RECOMMEND that the Application be **denied**

and this matter be dismissed with prejudice.[1]

---

    [1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and
file any written objections in order to obtain reconsideration by the District Judge to whom this
case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those
findings or recommendations to which the objections are being made. The District Court need
not consider frivolous, conclusive or general objections. A party's failure to file such written
objections to proposed findings and recommendations contained in this report may bar the party
from a de novo determination by the District Judge of the proposed findings and
recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980);
28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed
findings and recommendations within fourteen (14) days after being served with a copy may bar

## SUMMARY OF THE CASE

In January 2003, Applicant entered a global plea agreement in his three pending criminal cases in the District Court, Jefferson County, Colorado. *See*, *e.g.*, Vol. III, pp. 63-69.[2]  In case number 01CR1298 he pleaded guilty to first degree assault and a crime of violence enhancer; in case number 01CR2633 he pleaded guilty to possession of a schedule II controlled substance and a special offender enhancer; and in case number 02CR1739 he pleaded guilty to attempted first degree murder and a crime of violence enhancer. *People v. Ulrey (Ulrey I)*, No. 03CA0935, slip op. at 1 (Colo. App. Nov. 24, 2004).

Prior to sentencing, Applicant filed a Colo. R. Crim. P. 32(d) motion to withdraw his guilty pleas, claiming that "his counsel had done 'inadequate investigation of witnesses and defenses' so that his guilty pleas were 'uninformed and unwise,' and that a recent neuropsychological evaluation 'provided pivotal information which was not available . . . at the time the pleas were entered.'" *Id.* at 2.

On April 9, 2003, the state district court held an evidentiary hearing on this motion, after which the court found no fair and just reason for the withdrawal of his plea. *See id.* at 4; Transcript, Apr. 9, 2003, pp. 124-35.  Applicant was subsequently sentenced to the Colorado Department of Corrections for a term of thirty-eight years for attempted first degree murder and twenty years each

---

the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[2]Unless identified as a document filed on this Court's "docket," the citations refer to the state court record in this case.  Documents filed in all three of the underlying state cases will only be cited to the most recent case's docket, case number 02CR1739 (Vol. III).

for attempted first degree assault and possession of a schedule II controlled substance, the counts to be served concurrently. Vol. I, p. 130; Vol. II, p. 116; Vol. III, p. 98.

Applicant timely appealed the denial of his motion to withdraw his guilty plea to the Colorado Court of Appeals (CCA).  The CCA affirmed the district court's order, *Ulrey I*, No. 03CA0935, and the Colorado Supreme Court denied certiorari. *Ulrey v. People*, No. 04SC853 (Colo. Mar. 7, 2005).

After the state trial court denied a motion for reconsideration of his sentence, Vol. III, p. 155, Applicant filed *pro se* in March 2006 a Colo. R. Crim. P. 35(c) motion for postconviction relief asserting that his guilty plea resulted from ineffective assistance of counsel. Vol. III, pp. 156-63. The state trial court denied the motion without a hearing as duplicative of the previous Rule 32(d) motion, Vol. III, pp. 1645-66, and Applicant appealed this decision to the CCA. Vol. III, pp. 171-79. Counsel entered an appearance for Applicant after the appeal was filed. Vol. III, p. 181.

While the appeal was pending, Applicant filed a supplemental motion for postconviction relief in the trial court, and requested a remand from the CCA to the trial court for a hearing and ruling on this Rule 35(c) supplemental motion. Vol. III, pp. 200-12.  The CCA granted the request and remanded the case for this limited purpose. Vol. III, p. 213.

In the trial court, Applicant filed an extensive offer of proof which contained the evidence intended to be presented at the Rule 35(c) hearing. Vol. III, pp. 343-71.  After reviewing this offer of proof, the trial court determined that the ineffective assistance of counsel claim was not duplicative of Applicant's 32(d) motion as he had not had an "opportunity to fully and fairly argue the issue" previously. Vol. III, p. 374.  However, the trial court concluded that nothing in Applicant's offer of proof warranted an evidentiary hearing or demonstrated ineffective assistance

3

of counsel and it denied the supplemental motion. Vol. III, p. 374-77.  Applicant appealed this ruling and the CCA affirmed the trial court's decision to deny a hearing on the Rule 35(c) motion. *People v. Ulrey (Ulrey II)*, No. 06CA0827 (Colo. App. July 25, 2010).   Applicant did not appeal this decision to the Colorado Supreme Court, and the mandate from the CCA issued on September 14, 2010. Vol. III, p. 401.

Applicant initiated this action by filing his Application on October 17, 2010. Docket #1. Magistrate Judge Boyd N. Boland ordered Respondents to file a pre-answer response addressing only the affirmative defenses of timeliness and exhaustion of state court remedies. Docket #2. Respondents conceded that the Application appears to be timely and Applicant had exhausted his state court remedies for his claim.[3] Docket #5.  Magistrate Judge Boland then issued an order drawing the case to a district judge and magistrate judge.  Docket #6.

Applicant's sole claim for relief is that his plea counsel provided him ineffective legal assistance in violation of the Sixth and Fourteenth Amendments. Application at 43.   Applicant generally alleges that due to his counsel's deficient investigation into his cases, along with her faulty and/or deficient legal advice, he pleaded guilty instead of proceeding to trial with his meritorious defenses.  Because the Respondents challenge neither the timeliness nor exhaustion of this claim, the Court will proceed to analyze its merits.

---

[3]The Court notes that in *Ulrey II*, the Applicant only appealed the trial court's decision denying an evidentiary hearing. S*ee Ulrey II*, No. 06CA0827, slip op. at 1 ("Defendant . . . appeals the trial court's order denying, without an evidentiary hearing, his . . . 35(c) motion.") However, this Court agrees with Respondents that, liberally construed, both Applicant's appeal briefs and the CCA's opinion adequately addresses the law regarding ineffective assistance of counsel that he relies on in his Application and, therefore, he has satisfied the AEDPA exhaustion requirement. *See* 28 U.S.C. § 2254(b)(1)(A).

4

## ANALYSIS

I.    **Standard of Review**

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254, it must decide whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (citations omitted). Applicant is currently serving a thirty-eight year concurrent sentence for the challenged convictions; therefore, he is "in custody" for purposes of his Application. *See id.*

Before filing a federal habeas application, a state prisoner must first exhaust his state remedies by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Habeas review in this Court is concerned with the proceedings in the CCA in *Ulrey II*, which was the final substantive proceeding in the state appellate review process.

This case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA applies to all federal habeas applications filed after the AEDPA's effective date of April 24, 1996, regardless of when the state proceedings occurred. *Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999). Under the AEDPA, a petitioner is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or

5

was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

With respect to application of clearly established federal law, the first inquiry is whether clearly established law exists on the issue; only once this is established must the Court determine whether the state court's application of such law is objectively unreasonable. *House*, 527 F.3d at 1018 (citing *Carey v. Musladin*, 549 U.S. 70 (2006)) ("The absence of clearly established federal law is dispositive under § 2254(d)(1)").  "The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  As the Supreme Court stated:

> A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*,  544 U.S. 133, 141 (2005) (internal citations omitted); *see also Taylor v. Workman*, 554 F.3d 879, 887 (10th Cir. 2009).

The state court need not cite to Supreme Court cases in reaching its decision, provided that "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  Accordingly, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the Applicant as the federal standard, this Court may presume an adjudication on the merits and apply AEDPA deference. *Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993), the harmless error standard of *Brecht* must be applied. *Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002). Under *Brecht*, habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. This requires more than just an incorrect application of federal law, requiring instead a showing "somewhere between clearly erroneous and unreasonable to all reasonable jurists." *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006). Thus, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.* at 671.

With respect to the question whether a decision is based on an unreasonable determination of the facts, the statute provides that factual findings made by the state trial and appellate courts are presumed correct, with the petitioner bearing the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003). The burden remains, because "whether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*) (citations omitted).

According to the Tenth Circuit, this Court "owe[s] deference to the state court's *result,* even if its reasoning is not expressly stated." *Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999) (emphasis in original). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination

of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.* However, if the state court does not address a claim on the merits (*i.e.*, a decision reached on procedural rather than substantive grounds), this Court must review the claim *de novo* and the deferential standards in 28 U.S.C. § 2254(d) are not applicable. *See Gipson v. Jordan,* 376 F.3d 1193, 1196 (10th Cir. 2004).

## II.    Merits of Habeas Claim

Applicant's claim of ineffective assistance of counsel arises under the Sixth and Fourteenth Amendments to the U.S. Constitution. This claim is clearly established federal law for purposes of AEDPA, 28 U.S.C. §2254(d)(1), and is governed by the United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, "[t]o establish ineffective assistance of counsel, a defendant must show both deficient performance by counsel and prejudice." *Premo v. Moore*, 562 U.S. ___, ___, 131 S.Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. ___, ___, 129 S.Ct. 1411, 1419 (2009)); *Strickland*, 466 U.S. at 687. As this case involves a plea agreement, to establish prejudice Applicant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

On habeas review, strict adherence to *Strickland* is crucially important when reviewing plea bargains for at least two reasons:

> First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. . . .
> Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver

and forfeiture." . . . The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo*, 562 U.S. at ___, 131 S.Ct. at 741-42.

In *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 787-88 (2011), the Supreme

Court explained, in depth, the relationship between *Strickland* and AEDPA:

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland*], 466 U.S.[ at 688]. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.*[ at 689]. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*[ at 687].

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*[ at 694].  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*[ at 693].  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*[ at 687].

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S.___, ___, 130 S.Ct. 1473, 1485 [] (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S.[ at 689-90].

Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*[ at 689]; see also *Bell v. Cone*, 535 U.S. 685, 702 []

(2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372 [] (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S.[ at 690].

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*[ at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 [] (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, [] 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. [*Id.*] Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

In other words, on habeas review under AEDPA "the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[, and t]his is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at ___, 131 S.Ct. at 785; *Williams v. Taylor*, 529 U.S. 362, 410 (2000) (under AEDPA, an "*unreasonable* application of federal law is different from an *incorrect* application of federal law.").

The CCA applied the correct law in this case, as its opinion extensively cited to *Strickland*, *Hill*, and various state court cases that apply these two federal cases. Therefore, this Court's inquiry is limited to whether the CCA unreasonably applied *Strickland* (and *Hill)* to the facts in the underlying state criminal cases. *See* 28 U.S.C. § 2254(d)(1).

The general assertions outlined in the Application are identical to the claims Applicant raised in *Ulrey II*: "plea counsel's failure to interview witnesses in each of [his] cases was ineffective assistance because [those witness'] testimony would have established the viability of self-defense . . . the Make My Day defense . . . as well as prove that the charges were

10

unsubstantiated." *Ulrey II*, No. 06CA0827, slip op. at 12. Applicant claims that if counsel had properly investigated his cases, he would not have entered into the global plea agreement. *Id.*

    A.    <u>Deficient Performance</u>

Several of Applicant's arguments directly attack plea counsel's alleged deficient performance. For example, Applicant argues that plea counsel spent inadequate time investigating and preparing for the cases and provides billing records to support this assertion. *See* Application at 9, 15, 34-38. However, this Court agrees with the CCA that there is no specific amount of time that must be devoted to investigate a claim. *See Ulrey II*, slip op. at 26-27 (no case law advanced by Applicant to support this argument). It was not unreasonable for the CCA to find that a criminal defense attorney, especially one that had been practicing for eighteen years, was in a better position to determine the amount of work that needed to be performed in the case given the circumstances, evidence, and her personal experience. *See Premo*, 562 U.S. at ___, 131 S.Ct. at 741 ("An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it as after a trial. . . . [H]abeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel."). Thus, the amount of time billed is non-dispositive for determining whether plea counsel provided adequate representation in the criminal cases.

The CCA instead found that the record indicated that plea counsel had reviewed all investigation materials provided to her; had performed preliminary investigations on several pertinent subjects; had met with Applicant more than ten times prior to the plea; had explained both self-defense and the Make My Day defense multiple times; that her interpretation of the merits of those defenses was appropriate; and that the client understood the explanations. *Ulrey II*, No.

06CA0827, slip op. at 12-14; *see also Ulrey I*, No. 03CA0935, slip op. at 6 ("defendant had a full understanding of his actions when he pleaded guilty").

Therefore, broadly reviewing counsel's representation as a whole, it was reasonable for the state court to conclude that her performance was not deficient under *Strickland*.

B.   Prejudice

The bulk of Applicant's arguments are that plea counsel's treatment of various evidence in the criminal cases was incorrect, and this ineffective assistance affected Applicant's decision to enter a plea.  Generally speaking, the CCA focused on the prejudice prong of *Strickland* when analyzing Applicant's claims to conclude that none of counsel's alleged faults would have influenced Applicant's decision to plead guilty.[4] *Strickland*, 466 U.S. at 687 (failure to establish either prong is fatal to an ineffective assistance claim).

1. Case Number 01CR1298

In this case, the Applicant fired one shot at a car that was following him, which contained three people, striking that car's radiator. *Ulrey II*,  No. 06CA0827, slip op. at 1.  Applicant was charged with three counts of attempted first degree assault, among other charges. *Id*.  Applicant claims that plea counsel failed to interview seven witnesses who would have testified that he had an altercation a few nights before the shooting incident with one of the victims, and that this victim wanted to fight him on the evening of the incident. *Id.* at 14-15.

_____

[4]In *Ulrey II*, the issue on appeal was whether Applicant was entitled to an evidentiary hearing on his Rule 35(c) motion. *See supra* note 3.  Therefore, the CCA's focus in its analysis in *Ulrey II* was whether anything in Applicant's offer of proof was of "sufficient moment or gravity as to compel the conclusion that defendant would have insisted on going to trial when facing the multitude of counts and the evidence against him." *Ulrey II*, No. 06CA0827, slip op. at 14.  In other words, counsel's performance was largely ignored and instead analysis in *Ulrey II* focused primarily on the prejudice standard as defined in *Hill*.

The record indicates that all seven witnesses were previously interviewed by Applicant's investigator. *Id.* at 15. Therefore, this information was known to both plea counsel and Applicant before the plea. Further, the proffered testimony does nothing more than indicate that Applicant had a volatile relationship with, and had experienced a recent altercation with, one of the victims. *Id.* at 15-16. This information was already known to Applicant and was part of his decision making calculus when determining whether to accept the plea offer.

It was reasonable for the CCA to determine on this record that Applicant would not have altered his decision to enter a plea based on any testimony from these witnesses, and the CCA's decision was not an unreasonable application of *Strickland*.

2. Case Number 01CR2633

The CCA summarized this case as follows:

> [Applicant] was a passenger in a vehicle driven by his cousin. The police stopped the car because of a traffic violation. The police arrested the cousin on an outstanding warrant and found a handgun in the cousin's pants. A search of the vehicle found a disassembled methamphetamine manufacturing lab and methamphetamine in two backpacks, one of which contained the defendant's driver's license, together with another gun under the seat where defendant had been sitting.

*Id.* at 1.

Applicant was charged with, among other crimes, possession of a schedule II controlled substance with intent to manufacture and three special offender enhancers. *Id.* at 1-2. Applicant claims that plea counsel failed to interview five witnesses, did not properly analyze his cousin's trial and its outcome, and improperly analyzed the merits of the special offender counts.

The CCA found that two of the witnesses identified were interviewed by the prosecution, and this information was provided to plea counsel. *Id.* at 16. Thus, although these witnesses had

13

testimony that may have buttressed Applicant's defense, this was known by Applicant at the time

of the plea. *Id.* at 16-17.  The other three witnesses would have provided testimony in which it could

be inferred that the Applicant did not knowingly possess any controlled substance. *Id.* at 17.  Once

again, this evidence would have already been known to Applicant at the time he pleaded guilty.

The CCA found that the cousin's acquittal of some of the charges against him did not provide

a complete defense for the Applicant. *Id.* at 18.  Applicant himself admits that "there is no

guarantee" that he could expect the same results for his trial.  Application at 13.  Further, the cousin

was convicted of the same counts to which defendant eventually pleaded guilty. *Ulrey II*, No.

06CA0827, slip op. at 18.  Finally, nothing in the record indicates the cousin could have, or

voluntarily would have, testified in trial. *Id.*

Applicant also argues that due to a lack of evidence, plea counsel was ineffective in

concluding he likely would be convicted of the special offender count without any investigation into

the facts.  However, the CCA found that this argument was factually incorrect: the record indicates

that plea counsel conveyed her opinion to Applicant before the guilty plea and her opinion is

supported by the facts in the case. *Id*. at 17-18.

It was reasonable for the CCA to determine that even in the absence of plea counsel's alleged

deficient performance, to the extent it was even deficient, it would not have caused Applicant to

change his plea decision.

C.   Case Number 02CR1739

In his attempted murder case, Applicant "fired two shots at two acquaintances approaching

his residence garage, hitting one of them in the chest." *Id*. at 2.  Besides attempted first degree

murder, Applicant was charged with four counts of crime of violence, among others. *Id*.  Applicant

14

claims that plea counsel provided inadequate representation by failing to interview seven witnesses and failing to conduct sufficient research and analysis regarding the viability of self-defense and the Make My Day defense. *See id.* at 11-12 (providing details on statutory self-defense, Colo. Rev. Stat. § 18-1-704, and Make My Day, Colo. Rev. Stat. § 18-1-704.5, defenses).

The CCA analyzed in-depth each of the seven witnesses Applicant identified in his offer of proof. *See Ulrey II*, No. 06CA0827, slip op. at 19-23. That court found that many of these witnesses were, in fact, interviewed, and the details of these interviews were reviewed by plea counsel. Applicant provided no evidence that these witnesses would testify differently than what they had previously told the various investigators. Several witnesses did not have information relevant to Applicant's defenses. Additionally, several witnesses either made contradictory statements or provided evidence that tended to *disprove* Applicant's defenses.

At least one witness was unknown to any party at the time of the plea, through no fault of plea counsel. *Id.* at 19; *see Premo*, 562 U.S. at ___, 131 S.Ct. at 742 (party accepting plea "risks consequences that may arise from contingencies or circumstances yet unperceived"). Another witness was unavailable at the time of the plea, with no indication that he would be available by trial. *Ulrey II*, No. 06CA0827, slip op. at 22. Finally, most of these witness' testimony were details already known to Applicant at the time of the plea.

Applicant argues that plea counsel did not investigate potential forensic evidence. However, the CCA noted that plea counsel did, in fact, investigate and examine various forensic evidence at both the police station and at the crime scene. *Id.* at 24-25. Her opinion that further forensic investigation was not needed was corroborated by various witness statements. *Id.* at 24. The CCA noted that further forensic investigation would not have uncovered evidence relevant to Applicant's

defense theories. *Id.* Further, although her investigation was limited, plea counsel leveraged the possibility of further forensic investigation during the plea negotiations to obtain a better deal. *Id*.

Finally, Applicant claims that plea counsel failed to adequately advise him of the details of his available defenses. However, the CCA found the record indicated that plea counsel did an adequate job of analyzing the merits of those defenses, her analysis was appropriate given the evidence at the time of the plea, and plea counsel shared this information with Applicant before he agreed to accept the plea offer.

On habeas review, this court must analyze whether the state court unreasonably applied *Strickland* in the context of the record in this case. *Harrington*, 562 U.S. at ___, 131 S.Ct. at 785. Here, the state court used the proper legal standards and engaged in a detailed discussion of why Applicant's arguments did not violate those standards. The state court's application of *Strickland* in this case was reasonable, and this is the extent of the review available under the AEDPA. *Id*. This Court finds that Applicant has failed to meet his "substantial burden to show ineffective assistance of counsel." *Premo*, 562 U.S. at ___, 131 S.Ct. at 746. Consequently, this Court respectfully recommends that the District Court deny the Application.

## CONCLUSION

In viewing the merits of the Applicant's claim, the Court finds that the Applicant is not entitled to relief under 28 U.S.C. § 2254. Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing is required.

Based upon the foregoing analysis, and the entire record herein, I hereby RECOMMEND that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [filed October 17, 2010; docket #1] be **denied**, and this case dismissed with prejudice.

Dated at Denver, Colorado, this 17th day of August, 2011.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge